256 P.3d 522 (2011)
2011 WY 112
In the Matter of the Establishment of a Private Roadway to Real Property Owned by Daniel GALLAGHER.
J & T Properties, LLC, Appellant (Respondent),
v.
Daniel Gallagher, Appellee (Petitioner).
No. S-10-0213.
Supreme Court of Wyoming.
July 21, 2011.
*523 Representing Appellant: R. Todd Ingram of Clapp, Ingram & Olheiser, P.C., Casper, Wyoming.
Representing Appellee: Keith R. Nachbar of Keith R. Nachbar, P.C., Casper, Wyoming.
Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.
KITE, Chief Justice.
[¶ 1] The district court granted Daniel Gallagher a private road across land owned by J & T Properties, LLC (J & T). J & T appealed, arguing the private road did not meet the statutory requirements because it did not connect directly to a public road and the district court erred by not ordering Mr. Gallagher to reimburse J & T for the costs of an appraisal establishing the damages to its property from the private road.
[¶ 2] We affirm.

ISSUES
[¶ 3] J & T presents the following issues on appeal:
A. Did the district court err in failing to create a private road leading from Gallagher's land "to some convenient public road?"
B. Did the district court err in failing to award J & T costs incurred [in] obtaining and presenting its own "before and after" appraisal?
Mr. Gallagher restates the issues as:
1. Does the private roadway statute, Wyo. Stat. § 24-9-101, require joining neighboring landowners in the proceeding where the applicant already holds legal and record access to a public road across those neighboring lands?
2. Did the District Court below commit reversible error by declining to order the applicant to pay for the private commercial appraiser hired by the landowner?
J & T articulates several issues in its reply brief. However, just one complies with the requirements of W.R.A.P. 7.03, which allows a reply brief only when necessary to address new issues raised in the appellee's brief. The one issue meeting that requirement is whether J & T argued in the district court that the rules of civil procedure authorized reimbursement of the appraisal fees.

FACTS
[¶ 4] Mr. Gallagher purchased property in an industrial area of Natrona County, just west of J & T's property. When he purchased the property, he believed that a series of easements across properties to the east provided access to a nearby public road. However, Mr. Gallagher soon learned that he did not have an easement across J & T's property. Consequently, on July 17, 2008, he petitioned the Natrona County Board of County Commissioners for a private road across J & T's property.
[¶ 5] The county commissioners concluded that Mr. Gallagher has no legally enforceable access and certified the case to the district court.[1] The district court appointed *524 viewers and appraisers to locate a private road and place a value on the damage to the condemned property. The viewers and appraisers recommended condemning a private road along an existing roadway on J & T's property. The private road began at Mr. Gallagher's property line and continued east to the eastern boundary of J & T's property, where it connected with a series of private easements crossing the adjoining properties to a nearby public service road.
[¶ 6] The viewers and appraisers set the value of the damage to J & T's property from the private road at $1,000, without any evidentiary basis for that amount. J & T engaged a professional appraiser who performed a before-and-after analysis of the impact of the private road and concluded that the value of J & T's property was reduced by $8,200 as a result of the private road.
[¶ 7] After a hearing, the district court accepted the viewers and appraisers' recommendation as to the location of the road, but rejected their damages valuation and accepted J & T's. Although the district court awarded J & T the higher damage amount, it refused to award other expenses requested by J & T, including the cost of the appraisal. J & T appealed.

STANDARD OF REVIEW
[¶ 8] Resolution of this case requires us to interpret the relevant statutes and court rules. Because these determinations involve issues of law, our standard of review is de novo. Dorr v. Smith, Keller & Assoc., 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo. 2010).

DISCUSSION

A. Private Road Statute
[¶ 9] J & T argues Wyo. Stat. Ann. § 24-9-101 (LexisNexis Supp. 2008) required that a private road directly connect the applicant's landlocked parcel to a public road and the district court violated the statute by condemning a private road which connected with a series of private easements to reach a public road. The gist of J & T's argument is that Mr. Gallagher should have joined, in the private road action, all of the owners of the land he traversed to reach a public road even though he already had private easements across their properties.
[¶ 10] The relevant portion of § 24-9-101[2] stated:
(a) Any person whose land has no outlet to, nor connection with a public road, may file an application in writing with the board of county commissioners in the county where his land is located for a private road leading from his land to some convenient public road.

(Emphasis added). This Court applies the following principles when interpreting statutory language:
Statutory interpretation is a question of law. Our paramount consideration is the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute. Initially, we determine whether the statute is clear or ambiguous.
A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.
In interpreting a statute, we will not ignore other statutory provisions pertaining to the same subject but will, instead, consider all such provisions in pari materia.
Sorensen v. State Farm Auto. Ins. Co., 2010 WY 101, ¶ 13, 234 P.3d 1233, 1237 (Wyo. 2010), quoting Horse Creek Cons. Dist. v. State ex rel. Wyo. Attorney General, 2009 WY 143, ¶ 14, 221 P.3d 306, 312 (Wyo.2009) (citations omitted).
*525 [¶ 11] Section 24-9-101(a) allows a person to apply for a private road if he has no outlet to, nor connection with, a public road. We have interpreted this language as allowing a private road application when the petitioner does not have permanent, unrestricted, legally enforceable access to his property. See, e.g., Voss v. Albany County Comm'rs, 2003 WY 94, 74 P.3d 714 (Wyo.2003) (holding that personal and/or restricted easements do not satisfy the statute's "legally enforceable" access requirement). On the other hand, if the applicant has legally enforceable access, even via a private easement, he is not landlocked and is not entitled to a private road. See id.
[¶ 12] Section 24-9-101(a) sets out the requirements for a private road application and those requirements demonstrate that the legislature wanted to encourage landlocked property owners to obtain private easements, if possible, rather than apply for private roads. Subsection (ii) requires the applicant to include a "specific statement as to why the land has no legally enforceable access;" subsection (iii) requires a "description of the applicant's efforts to purchase a legally enforceable access to a public road;" and subsection (vi) requires a "statement as to whether any actions of the applicant or any person with the consent and knowledge of the applicant, caused the applicant's land to lose or to not have any legally enforceable access." Bearing in mind the legislature's obvious preference for private negotiations, it does not follow that it would require a landowner to condemn a right of way across property over which he already has legally enforceable access or to join parties who had previously provided such access.
[¶ 13] Section 24-9-101(a) states that the applicant can apply for a private road leading from his land to some convenient public road. The plain meaning of "lead" in the context used here is "to serve to bring a person to a place." Webster's Third New Int'l Dictionary 1281 (2002). Applying this definition, the statute clearly states that the private road must "serve to bring a person to" a public road. It does not state that the private road has to cover the entire distance from the applicant's land to the public way or terminate at a public road. "When the legislature omits language from a statute, we consider the omission intentional." Office of State Lands and Inv. v. Mule Shoe Ranch, Inc., 2011 WY 68, ¶ 22, 252 P.3d 951, 957 (Wyo.2011), citing Stutzman v. Office of the Wyo. State Engineer, 2006 WY 30, ¶ 16, 130 P.3d 470, 475 (Wyo.2006).
[¶ 14] Closs v. Schell, 2006 WY 95, 139 P.3d 435 (Wyo.2006) involved a private road that connected to a private easement rather than a public road. The Schells applied for a private road along an existing two track road across two different properties, the Closses' and Mr. Gronski's, to a public road. Prior to the initial hearing on the Schells' application, Mr. Gronski granted the Schells an easement across his property and was dismissed from the private road action. Although the issue of whether it was proper for a private road to terminate somewhere other than at a public road was not specifically raised, we did not indicate that there was anything wrong with the Schells using a private road and the Gronski easement to gain access to a public road. The decision indicates that once Mr. Gronski agreed to a private easement, it was appropriate to dismiss him from the action. Id., ¶¶ 3-6, 139 P.3d at 438-39.
[¶ 15] We have long said that "convenience and reason should prevail in the establishment of roads," and these policies are included within the private road statutes. See, e.g., Lindt v. Murray, 895 P.2d 459, 462 (Wyo.1995). The statutes are also intended to provide "a readily available, economically affordable, and time efficient method to obtain a means of access to property." Martens v. Johnson County Board of Comm'rs, 954 P.2d 375, 380 (Wyo.1998). By interpreting the private road statutes to allow an applicant to use other means of legal access together with a private road to cure his access problem, we fulfill the policies of reason, convenience and economic affordability. Moreover, we avoid the unsatisfactory result that would arise if an applicant who had gone to the time and expense of securing private easements along part of his way then had to bring those same people into the private road condemnation action. The district court correctly interpreted § 24-9-101 as allowing the condemnation of a private road even though *526 it did not connect directly with a public road and properly refused to require Mr. Gallagher to join the owners of land over which he already had easements.[3]

B. Costs
[¶ 16] J & T maintains that the district court erred by denying it reimbursement for the costs of securing and presenting the appraisal used in determining its damages. Specifically, it requested $2,500 for the appraisal and $130 for the costs of having the appraiser testify at the hearing.
[¶ 17] Section 24-9-101(f) stated: "The board may assess to the applicant costs for acting on the application under this section and W.S. 24-9-103...." Wyo. Stat. Ann. § 24-9-103(d) (LexisNexis Supp. 2008) stated: "In addition to paying any damages to be suffered by the affected parties having an interest in the land through which the access shall be provided, the applicant shall be responsible for obtaining and for paying for any engineering and construction costs incurred concerning the location and construction of the road." The district court reviewed the private road statutes and concluded they did not authorize assessment of the appraisal costs to Mr. Gallagher. We agree.
[¶ 18] The plain language of § 24-9-101(f) addresses the costs the county commissioners, or in this case the district court, may assess for "acting on the application," which would include things such as paying the statutorily mandated viewers and appraisers and the costs of the court-ordered survey. The costs of acting on the application do not logically include the expenses incurred by either party for the preparation of their respective case, including the retention of experts. On its face, § 24-9-103(d) also does not authorize an award of appraisal costs. The statute is very specific and only imposes upon the applicant the responsibility to pay for engineering and construction costs.
[¶ 19] We certainly understand that it may seem inequitable to require J & T, the respondent in this private road action, to pay the costs of the appraisal, especially when the district court expressly rejected the viewers and appraisers' damages calculation and assessed a much higher damages amount in accordance with J & T's independent appraisal. However, we are limited by the statutory language and there is simply nothing in the relevant statutes to support awarding J & T the costs of the appraisal. The legislature is, therefore, the appropriate forum to address the propriety of awarding such costs in private road actions.
[¶ 20] J & T also argues that, because § 24-9-101(m) specifically provides that private road actions certified to the district court shall be treated as civil actions, the rules of civil procedure apply.[4] It claims that it was the prevailing party on the damages issue and, consequently, W.R.C.P. 54(d) and U.R.D.C. 501 authorized the district court to require Mr. Gallagher to pay the appraisal expenses. In particular, J & T argues that Rule 501(a)(3)(B)(ii) authorizes the district court to award it $130 for expert witness fees and Rule 501(a)(3)(F) allowed an award of $2,500 for the costs for preparing the appraisal.
[¶ 21] W.R.C.P. 54(d)(1) provides generally that the prevailing party is entitled to its costs:
(1) Costs Other Than Attorney's Fees. Except when express provision therefor is made either in a statute or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State of Wyoming, its *527 officers or agencies, shall be imposed only to the extent permitted by law.
U.R.D.C. 501(a) delineates the allowable costs in civil cases and provides in relevant part:
(1) Filing of Certificate of Costs.Within 20 days after entry of the final judgment allowing costs to the prevailing party, a certificate of costs shall be filed and copy served upon opposing counsel.
....
(3) Allowable Costs.
....
(B) Witness fees.
....
(ii) Expert witness fees shall be allowed at the rate of $25.00 per day or such other amount as the court may allow according to the circumstances of the case. If the amount allowed constitutes a higher hourly rate than $25.00 per day, this higher amount is allowable only for the time that the expert witness actually testified. Time charged in preparation for providing testimony and/or standing by awaiting the call to give testimony is not allowable as costs, except at the rate of $25.00 per day.
....
(F) Exhibits Received in Evidence. The expense of preparing exhibits received in evidence, including 8 by 10 photographs (but not enlargements), videotapes, models, and other demonstrative evidence are allowable as taxable costs at the discretion of the court.
[¶ 22] Mr. Gallagher claims that J & T did not argue to the district court that it was entitled to costs under the rules of civil procedure. "[W]e typically do not address arguments that were not raised in, or argued to, the district court unless they are fundamental or jurisdictional in nature." Union Pacific Railroad Co. v. Caballo Coal Co., 2011 WY 24, ¶ 22, 246 P.3d 867, 873 (Wyo. 2011). With regard to the expert witness fees, J & T concedes it did not present any evidence to the district court about the appraiser's charge for testifying at the hearing because it did not receive his $130 bill until later. Given its failure to present the matter to the district court, we will not consider it on appeal.
[¶ 23] Although J & T did request the district court award it the $2,500 appraisal fee, it did not specifically argue to the district court that it was entitled to recover the costs of the appraisal pursuant to Rule 54(d) and U.R.D.C. 501. Even now, J & T provides no authority or cogent argument to establish that it was the prevailing party or that an appraisal fee qualifies as an "expense of preparing exhibits received in evidence" under Rules 54(d) and 501(a)(3)(F). Egan v. Egan, 2010 WY 164, ¶ 15, 244 P.3d 1045, 1050 (Wyo. 2010); Pittard v. Great Lakes Aviation, 2007 WY 64, ¶ 44, 156 P.3d 964, 977 (Wyo.2007). The argument was not properly presented to the district court or this Court, and we refuse to consider it further.
[¶ 24] Affirmed.
NOTES
[1] Wyo. Stat. Ann. § 24-9-101(m) (LexisNexis 2008) allowed the board of county commissioners to certify the case to the district court:

If at the completion of the hearing the board finds that the applicant has satisfied the requirements of this section and access is necessary because the applicant has no legally enforceable access, the board shall, within twenty (20) days of so finding, certify the application directly to the district court unless the board elects to retain jurisdiction.
The authority for certification is currently found in Wyo. Stat. Ann. § 24-9-101(h) and (m) (LexisNexis 2011).
[2] This same language is included in the current version of the statute. Wyo. Stat. Ann. § 24-9-101 (LexisNexis 2011).
[3] J & T argues in its reply brief that Mr. Gallagher did not present sufficient evidence that he had legally enforceable access across the other properties. "The purpose of a reply brief is to allow the appellant to reply to new issues raised in the appellee's brief; not to raise new issues himself." Mattern v. State, 2007 WY 24, ¶ 1 n. 1, 151 P.3d 1116, 1120 (Wyo.2007). We will not, therefore, consider J & T's new issue.
[4] Subsection (m) was amended in 2009 to specifically state that the rules of civil procedure apply to private road actions before the district court. Because we conclude J & T did not properly present the issue of whether the rules of civil procedure required assessment of the appraisal costs, we do not need to consider whether the statutory change had any effect in this case.